Louis B. Heller, J.
This case involves the enforcement of a sister-State divorce judgment, with respect to arrears in alimony and support payments, pursuant to the Uniform Enforcement of Foreign Judgments Act (CPLR art 54).
FACTS
In January, 1973, the plaintiff wife commenced an action for divorce in the Superior Court of the State of Connecticut where she was then living and has continued to reside with her two minor children. While the action was pending, the parties executed a separation agreement on April 16, 1973. The agreement provided, inter alia, for semimonthly payments to the plaintiff for alimony and child support. Thereafter on August 16, 1973, the plaintiff was granted a judgment of absolute divorce by the Connecticut court, specifically incorporating the terms of the separation agreement, the agreement surviving and not merging into the decree.
From the papers it appears that the defendant resided in Manhattan when the separation agreement was executed, and in Brooklyn when the divorce judgment was granted. There is no question of the defendant appearing in and being represented by counsel in the divorce action. Defendant currently lives in Brooklyn and is a practicing veterinarian. Plaintiff alleges that she is a housewife with part-time employment as a teacher in Stamford, Connecticut, where her gross annual pay is $3,000.
plaintiff’s claims
Plaintiff claims, and it is not disputed by the defendant, that commencing on July 16, 1975 and continuing through the January 16, 1976 payments, defendant has been paying one half of the required amount due each payment date. The resulting arrearages are summarized and set forth below, covering two periods of time for reasons hereafter discussed:
Period Covered Amount Due Amount Paid Amount Owed
July 16,1975-October 16, 1975 $6,974.00 $3,481.00 $3,493.00
November 1,1975-January 16,1976 $6,060.60 $2,895.00 $3,165.60
On October 6, 1975, the plaintiff brought a motion in the Superior Court in Connecticut to hold the defendant in contempt for his failure to make full alimony and support pay- *659 merits to the plaintiff as required by the divorce judgment. On October 30, 1975, defendant was found in contempt of court and was ordered to pay arrears in the amount of $3,493 (covering the period July 16, 1975 through October 16, 1975) plus $350 in counsel fees for a total judgment of $3,843.
The defendant having failed to pay the $3,843 and having accumulated additional arrears of $3,165.60, the plaintiff now seeks enforcement of these unpaid amounts in the courts of this State pursuant to CPLR article 54. In accordance with the requirements of CPLR 5402 (subd [a]), plaintiff first filed both foreign judgments — i.e., the divorce decree and the contempt order — along with accompanying affidavits in the office of the County Clerk. She set forth in each affidavit the amount of the respective judgments remaining unsatisfied — viz. $3,165 as to the judgment of divorce and $3,843 as to the contempt judgment.
Plaintiffs second and next step in the procedure was to file an application with the court for the enforcement relief which she is seeking. This she has done by the instant order to show cause in which the plaintiff requests the following relief:
"(1) Pursuant to Domestic Relations Law, Section 245, adjudging the defendant to be in contempt of court for his failure to fully comply with the alimony and support provisions of the judgment of divorce herein, dated August 16, 1973, and with the separation agreement between the parties, dated April 16, 1973, both heretofore filed in the County Clerk’s Office of Kings County, in that defendant is in default in the payment of alimony and support in the total sum of $3,165.60 up to and including January 16, 1976;
”(2) Pursuant to Domestic Relations Law, Section 244, directing the entry of a money judgment in the sum of $3,165.60 against defendant and in plaintiffs favor;
"(3) Pursuant to Domestic Relations Law, Sections 244 and 245 and Section 5402(a), CPLR, directing the entry of a money judgment in the sum of $3,843.00 against defendant and in plaintiffs favor and adjudging defendant to be in contempt of court for his failure to comply therewith;
"(4) Pursuant to Personal Property Law, Section 49(b), directing the Animal Hospital of Brooklyn, Inc., whose principal place of business is located at 2270 Flatbush Avenue, County of Kings, City and State of New York, to deduct weekly from the salary and earnings of defendant, a sum to be determined by this Court, and further directing the said *660 employer to forward, weekly, the sums so accumulated to the plaintiff at her residence, 25 Rolling Wood Drive, Stamford, Connecticut 06905, or at such other place as she may hereafter designate in writing for the support of the plaintiff and the two (2) infant issue of the marriage, or, alternatively,
"(5) Directing the defendant, JOEL EHRENZWEIG, to post a bond in a sufficient sum to be fixed by the Court, as security for all future alimony and child support payments;
"(6) Pursuant to Domestic Relations Law, Section 237, granting plaintiff a counsel fee for the services necessarily rendered and to be rendered by her attorney in connection with the instant application.”
defendant’s contentions
The defendant has cross-moved for an order dismissing the motion pursuant to CPLR 3211 (subd [a], par 2) and/or CPLR 3211 (subd [a], par 8) on the grounds that the court neither has jurisdiction of the subject matter of this action nor jurisdiction of the person of the defendant. Since the court clearly has personal jurisdiction over defendant in this proceeding, this branch of the defendant’s cross motion shall be disposed of immediately and is hereby denied. The court’s jurisdiction of the subject matter will be decided later as this issue is so intertwined with plaintiff’s motion that a determination of the latter will resolve the former.
As noted earlier the defendant does not dispute the substantive claims asserted by the plaintiff as to the amount of the arrears, but instead the defendant addresses himself exclusively to the jurisdictional and procedural deficiencies in the relief being sought by the plaintiff. Specifically, and with respect to each item of relief requested, the defendant raises the following objections:
(1) Contempt.
(a) Plaintiff cannot seek this remedy without first having obtained a judgment in this State for the arrears and showing defendant’s willful noncompliance.
(b) The status of the law with respect to an application for a contempt adjudication against the defendant is in doubt in view of this court’s holding in Darbonne v Darbonne (85 Mise 2d 267).
(2) Entry of a money judgment in the sum of $3,165.60.
This amount is for arrearages due from November 1, 1975 *661 up to and including January 16, 1976. Plaintiff cannot sue directly for this amount in New York unless she first reduces said amount to a judgment in the State of Connecticut.
(3) Entry of a money judgment in the sum of $3,493,
This amount was found owing to plaintiff by the Connecticut contempt judgment rendered against the defendant. This judgment is not capable of enforcement pursuant to CPLR article 54 since the order was granted on a default in defendant’s appearance (CPLR 5401). Defendant alleges that he did not appear personally in the proceeding or authorize any attorney to appear on his behalf. The service of the contempt motion upon the attorney who represented defendant in the divorce action was of no effect inasmuch as the attorney had previously withdrawn as defendant’s counsel.
(4) Payroll deduction.
Section 49-b of the Personal Property Law contemplates a court order of a New York State court, not one from a sister State.
(5) Posting of a bond as security.
The defendant did not file any specific objection to this request for relief.
(6) Counsel fee application.
The plaintiff’s motion is not one of the instances enumerated in section 237 of the Domestic Relations Law for the awarding of a counsel fee.
UNIFORM ENFORCEMENT OF FOREIGN JUDGMENTS ACT
The plaintiff is proceeding under CPLR article 54 which article is cited as the "Uniform Enforcement of Foreign Judgments Act” (CPLR 5408). The pertinent sections of this act are set forth below in their entirety:
"§ 5401. Definition.
"In this article 'foreign judgment’ means any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state, except one obtained by default in appearance, or by confession of judgment.
"§ 5402. Filing and status of foreign judgments.
"(a) Filing. A copy of any foreign judgment authenticated in accordance with an act of congress or the statutes of this state may be filed within ninety days of the date of authentication in the office of any county clerk of the state. The judgment *662 creditor shall file with the judgment an affidavit stating that the judgment was not obtained by default in appearance or by confession of judgment, that it is unsatisfied in whole or in part, the amount remaining unpaid, and that its enforcement has not been stayed, and setting forth the name and last known address of the judgment debtor.
"(b) Status of foreign judgments. The clerk shall treat the foreign judgment in the same manner as a judgment of the supreme court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of the supreme court of this state and may be enforced or satisfied in like manner.
§ 5406. Optional procedure.
"The right of a judgment creditor to proceed by an action on the judgment or a motion for summary judgment in lieu of complaint, instead of proceeding under this article, remains unimpaired.”
Prior to the enactment of article 54, there was no particular machinery in New York for the enforcement of foreign judgments (Thirteenth Annual Report of NY Judicial Conference, 1968, pp 248, 249). Generally, the judgment creditor had to bring a new and independent action in New York upon an out-of-State judgment in order that it be docketed and enforced in this State (Thirteenth Annual Report, supra, pp 249-250; 6 Weinstein-Korn-Miller, NY Prac, par 5401.01). While summary judgment pursuant to CPLR 3212 and CPLR 3213 was and still is available to perhaps avoid a full-scale trial of this new action in New York (6 Weinstein-Korn-Miller, supra), nevertheless, the creditor was put to the burden and expense of having to commence such a plenary action in order to enforce his foreign judgment in this State (Thirteenth Annual Report, supra, p 248).
Article 54 was adopted to streamline this procedure by providing a simpler, speedier and less expensive method of enforcement (Fifteenth Annual Report of NY Judicial Conference, 1970, pp 27, 28). The article is similar to that adopted in the Federal District Courts (US Code, tit 28, § 1963) and is based upon the 1964 Uniform Enforcement of Foreign Judgments Act (Fifteenth Annual Report, supra), The basic philosophy and objective of these acts is that a judgment entitled to full faith and credit, rendered as a result of a plenary proceeding in a sister State court, need not be relitigated when sought *663 to be enforced in the second State (6 Weinstein-Korn-Miller, supra). Instead, as CPLR 5402 provides, the foreign judgment need only be registered in New York and once filed, the judgment may then be enforced in the same manner as though it were a judgment rendered in the Supreme Court of this State (CPLR 5402, subd [b]; Hill v Gottwald, 79 Mise 2d 40), although the former procedures still remain available (CPLR 5406; Overmyer v Eliot Realty, 83 Mise 2d 694, 702).
ISSUES
The initial task of this court is to determine the applicability of the Uniform Enforcement of Foreign Judgments Act, for if article 54 has been improperly invoked, the plaintiffs motion must be denied in its entirety and the second branch of defendant’s cross motion granted.
The court will therefore first consider these two questions:
1. May article 54 be used to enforce the financial provisions of a matrimonial judgment or decree of a sister State?
2. If so, was article 54 properly availed of under the facts in this case, both as to the divorce and as to the contempt judgments?
If the answers to "1” and "2” are both yes, then the court will deal with the multiple relief requested by the plaintiff and the objections raised thereto by the defendant.
FINDINGS AND CONCLUSIONS
1. Article 54 applies to "foreign judgments” as defined in CPLR 5401. With three exceptions, as hereafter discussed, the term foreign judgment refers to "any judgment, decree, or order” (emphasis supplied) of a sister State (CPLR 5401). (Whether a Federal court judgment is [CPLR 5401] or is not Knapp v McFarland, 462 F2d 935 [2d Cir.] subject to article 54 is not before this court.) The quoted language appears to be clear and unambiguous and perhaps leads to the conclusion that article 54 is intended to cover all judgments (Thirteenth Annual Report, supra, p 281; 6 Weinstein-Korn-Miller, supra, par 5401.02), and that "it makes no difference whether the foreign judgment requires the payment of money, or orders or restrains the doing as an act, or declares rights or duties of any other character in law or quoted, in probate, guardianship, receivership or any other type of proceedings.” (Thirteenth Annual Report, supra, pp 258-259.) However, it is not *664 necessary for the court to rule whether article 54 applies to all judgments, but within the confines of this case it suffices for this court to find that article 54 may be used to enforce the financial provisions of a sister State divorce judgment or decree, provided none of the exceptions set forth in CPLR 5401 apply.
The first exception, as stated in the affirmative, is that the sister State judgment, decree or order must be "entitled to full faith and credit in this state” (CPLR 5401) within the meaning of section 1 of article IV of the United States Constitution which mandates that "Full Faith and Credit shall be given in each State to the * * * judicial proceedings of every other State” (6 Weinstein-Korn-Miller, supra, par 5401.02). The second and third exceptions exclude judgments "obtained by default in appearance, or by confession of judgment” (CPLR 5401).
2. (a) There being no question as to the applicability of the second and third exceptions above to plaintiff’s Connecticut divorce judgment, the court will focus on whether the alimony and support arrears resulting therefrom are entitled to enforcement in this State under the full faith and credit clause. The law is well settled that a sister State decree for alimony and support will be accredited full faith and credit as to any arrears if the right to the' unpaid installments becomes absolute and "vested” as they become due, provided no modification of the decree has been made prior to the maturity of the installments (Sistare v Sistare, 218 US 1, 16-17; Chamberlain v Chamberlain, 32 Mise 2d 308, 310-311). But where the foreign court which rendered the divorce judgment has the discretion to modify outstanding arrears retrospectively, then such arrears are not considered absolute and vested and the decree for alimony and support is therefore not entitled to full faith and credit with respect thereto (Sistare v Sistare, supra; Smith v Smith, 249 App Div 660; Chamberlain v Chamberlain, supra).
Which of these principles apply in the State of Connecticut?
The court is empowered by the provisions of CPLR 4511 to take judicial notice of any statute or law of a sister State and pass upon its validity and effect (Phleuger v Phleuger, 304 NY 148).. The parties have sought to aid the court in this regard by citing authorities in their accompanying affidavits. The defendant relies on section 46-54 of the Connecticut General Statutes Annotated arid on section 381 of the Rules, for the *665 Superior Court (1 Connecticut Practice Book) in support of its position that alimony awards are subject to modification in Connecticut. Section 46-54 provides in pertinent part: "any final order for the periodic payment of permanent alimony or support * * * may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party.”
While there is some question as to whether this provision is even applicable here in view of the section’s effective date being subsequent to the date of the divorce decree (Conn Gen Stat, § 46-64b), nevertheless the court concludes that this statute as well as its predecessor (Conn Gen Stat, § 46-21) which provided: "Any order for the payment of alimony from income may, at any time thereafter, be set aside or altered by such court”), does not on its face empower the Connecticut courts to modify accrued unpaid installments of alimony or support. The same conclusion is reached as to section 381 of the Rules for the Superior Court as this section merely gives the court discretion to determine whether a modification of future payments should be ordered prior to the defendant’s payment of any arrears (see Author’s Note following section 381).
The statutes being of no assistance, the court must turn to Connecticut case law. The plaintiff cites but one Connecticut decision — and research has failed to reveal any others— DeGolyer v DeGolyer (13 Conn Supp 339, 342 [1945]) which held that: "Under the law of New York, as under our own law, a decree providing for periodic alimony payments is subject to modification as to future payments * * *. Past due payments, on the other hand, constitute vested property rights not subject to modiñeation, and it is only such payments which are enforceable in another jurisdiction” (emphasis supplied). While the reference to New York law is erroneous as to arrears (see Domestic Relations Law, § 236, last sentence), this court, in the absence of any authority to the contrary, accepts the case as expressing the law of the State of Connecticut. It is so cited in the Annotations following section 46-21 and was relied upon in the New York case, Rosmini v Rosmini (230 NYS2d 319, 320-321).
Consequently, the court holds that the plaintiff’s rights to the unpaid installments of alimony and support become vested as they become due and a fortiori that the Connecticut divorce judgment must be given full faith and credit as to any arrears. *666 Accordingly, the court finds that the Connecticut divorce decree meets the definition of a "foreign judgment” entitled to be filed in this State pursuant to article 54. There being no procedural objections by defendant as to the filing, and the court being presumptively satisfied that the requirements of CPLR 5402 (subd [a]), 5403 and 5405 have been met, the Connecticut divorce decree has been validly filed and the court will thereby regard it and enforce it as though it were a judgment of this court (CPLR 5402, subd [b]).
(b) The court is unable to reach the same conclusion with respect to the Connecticut contempt judgment. Defendant claims that this judgment cannot be registered pursuant to article 54 as it was obtained by defendant’s "default in appearance” (CPLR 5401). Although the plaintiff, in her affidavit accompanying the filing, stated perfunctorily that the judgment was not so obtained, the defendant has established to the satisfaction of the court that he did not appear in the contempt proceeding, to wit, he did not serve an answer or a notice of appearance (CPLR 320; L & W Air Conditioning Co. v Varsity Inn of Rochester, 82 Misc 2d 937, 938). The allegation that he may have had notice of the proceeding is of no import if in fact the defendant did not "appear.”
Thus, unlike the divorce decree, the Connecticut contempt order does not constitute a "foreign judgment” subject to enforcement under article 54 and plaintiff’s attempt to file this judgment in New York pursuant to CPLR 5402 is invalid.
3. Having concluded that the Connecticut divorce judgment was properly filed under article 54, the court will now examine the relief requested by the plaintiff.
A. Section 244 of the Domestic Relations Law provides that where the husband in an action for divorce, etc., makes default in paying any sum of money as required by the judgment or order directing the payment thereof, the court, in its discretion may make an order directing the entry of judgment in the amount of such arrears. Plaintiff seeks this relief with respect to the $3,165 in alimony and support arrears owing by defendant for the period November 1, 1975 through January 16, 1976.
Section 244 is deemed the exclusive remedy for the entry of such a judgment and that section requires only an application to the court (as plaintiff has done by the instant motion) and not an independent action as suggested by the defendant (St. Germain v St. Germain, 25 AD2d 568; Kahn v Sampson, 23 *667 AD2d 539). Since the Connecticut divorce judgment is now to be regarded as a domestic judgment (CPLR 5402, subd [b]), plaintiff has properly applied for this relief.
There being no other defense or objections raised by the defendant, the court grants this part of plaintiff’s motion in the full amount requested of $3,165.
B. Plaintiff also seeks entry of judgment as to arrears in the sum of $3,493 covering the period July 16, 1975 through October 16, 1975, and as to the $350 counsel fees awarded by the Connecticut court in the contempt judgment. Since plaintiff bases this relief solely on the filing of the Connecticut contempt judgment pursuant to article 54, which filing this court has already held invalid, the court must now decide whether to dismiss this branch of plaintiff’s motion pursuant to defendant’s cross motion or grant the relief on some other ground.
The court is not disposed to deny plaintiff this relief, inasmuch as the fact and the amount of these arrears are not in dispute and the underlying divorce judgment has been validly filed in accordance with the provisions of the Uniform Enforcement of Foreign Judgments Act. If the plaintiff’s affidavit accompanying this filing had made reference to the unpaid amount of $3,493, in addition to the $3,165 in arrears already set forth therein, the court would readily have granted entry of judgment as to both sums and the aborted filing of the contempt judgment would have been of no consequence except as to the counsel fees. Should the omission from the affidavit of the $3,493 in arrears be fatal on this motion to plaintiff’s request for relief as to same?
Under the circumstances of this case, the court thinks not. The court sees no need of subjecting the parties or the court to the burden and expense of a second proceeding at this time whereunder the plaintiff files a new affidavit, making reference to the already filed contempt judgment and setting forth the arrears of $3,493, and thereafter brings on another petition for entry of judgment as to this amount.
Rather, the court finds that there has been substantial compliance with article 54 as regards the arrears of $3,493. The underlying foreign judgment has been filed, the accompanying affidavit is in proper form except for the amount of the arrears and this minor defect has been cured, in the court’s opinion, by virtue of the notice otherwise given to the defendant as to these arrears. Accordingly, the court directs entry of *668 judgment as to an additional $3,493 in arrears, but denies the relief as to the $350 counsel fees which award was not granted in the divorce judgment.
C. Plaintiffs next two requests for relief — wage attachment and posting of security — appear to be sought only as to future payments of alimony and support and not as to the arrears. The court observes, however, that both remedies would be available, if plaintiff had so requested them, in enforcing the payment of arrears (see Personal Property Law, § 49-b, subd 3 as to wage deduction, and White v White, 263 App Div 744 as to security). The Connecticut divorce decree, having been properly filed pursuant to article 54 of the CPLR¡ is now to be considered as a domestic judgment for all purposes and may be enforced in the same manner as a domestic judgment (CPLR 5402, subd [b]).
Wage deduction pursuant to section 49-b of the Personal Property Law and posting of security pursuant to section 243 of the Domestic Relations Law are two such enforcement devices. Both remedies are, however, discretionary with the court, whether being imposed as to arrears or as to future payments (Kenney v Kenney, 28 Misc 2d 652 [wage deduction]; Domestic Relations Law, § 243 and Maney v Maney, 119 App Div 765, 767 [security]).
In view of the fact that defendant had been making full payments for over two years, that his reduced one-half payments are of recent origin albeit continuous, that defendant is a professional man with an alleged substantial practice and that this matter is before this or any New York court for the first time, the court, in its discretion, is not convinced that resort to wage deduction or posting of security is now necessary. V
Accordingly, the court denies these branches of plaintiff’s motion, conditioned, however, upon (1) immediate resumption by defendant of full payments of alimony and support and (2) payment of all arrears involved in this motion, including counsel fees awarded in the Connecticut contempt judgment and which may be awarded on this motion, within 60 days after service of a copy of the order to be settled herein (cf. Rosenwasser v Rosenwasser, 117 Misc 123, 125). In the event the defendant fails to honor either or both of these conditions, the plaintiff is granted leave to renew her motion for a wage deduction and the posting of security.
D. For like reasons, and because of the relief granted above *669 as to the arrears, the court in its discretion also denies that branch of the order to show cause seeking to hold the defendant in contempt (DRL § 245; Weglarz v Burkiewicz, 275 App Div 989), but without prejudice to its renewal by the plaintiff in the event the other relief proves unavailing.
This court would, however, like to take this opportunity to restate its decision viz-á-viz contempt proceedings in matrimonial actions. In Darbonne v Darbonne (85 Mise 2d 267, 270), I held "that the statutory scheme for contempt proceedings pursuant to section 245 of the Domestic Relations Law violates the due process clause of the Fourteenth Amendment [of the United States Constitution] and is unconstitutional” and that "consequently, this court will no longer enforce by contempt proceedings a husband’s obligation to pay an allowance ordered in a matrimonial action.” While the court is not unmindful of the subsequent holding by the Appellate Division, Second Department, in Walker v Walker (51 AD2d 1029) sustaining the constitutionality of section 245 of the Domestic Relations Law that case can be readily distinguished on its facts.
None of the constitutional infirmities denying the debtor husband his due process rights in Darbonne were present in Walker. Quoting from the last paragraph in Walker (p 1030):
"Here, the appellant received all of the due process rights which were denied to the plaintiff in Vail. [Vail v Quinlan, 406 F Supp 951 (S.D., N.Y.) a three-Judge Federal constitutional court decision, declaring the various contempt sections of article 19 of the Judiciary Law unconstitutional was the basis for this court’s decision in Darbonne. But it should be noted that Vail was being followed not because the court was bound by that determination, but because this court concurred with its holding and with the reasons expressed therefor.] He had been previously imprisoned for violation of the alimony judgment, he was served with proper process bringing on this proceeding and he was represented by counsel who appeared and argued on his behalf. Thus, all of the alleged infirmities in the statutes held unconstitutional in Vail are not here applicable. The court there was dealing with a defaulting, impecunious debtor who did not appear at the statutorily guaranteed hearing, who was without any knowledge of the possible consequences to him and who had no counsel. The facts here are the opposite.”
By way of contrast, the debtor husband in Darbonne was *670 not represented by counsel and defaulted in appearing in the contempt action so the court was unable to determine from the order to show cause whether he had been previously imprisoned for violation of a prior court order and divorce judgment, or whether he had been served with proper process, or whether he had adequate notice that the proceeding might result in possible imprisonment, or whether he had adequate notice that he could perhaps avoid incarceration by asserting, pursuant to section 246 of the Domestic Relations Law his financial inability to pay as a defense. Thus in Darbonne, as in many of the contempt proceedings which have come before me, the court "was dealing with a defaulting, [possibly] impecunious debtor who did not appear at the statutorily guaranteed hearing, who was without any knowledge of the possible consequences to him and who had no counsel” (Walker v Walker, supra, p 1030).
The clear implication of Walker is that a debtor husband in a Darbonne type of situation would be denied his due process rights in a contempt proceeding pursuant to section 245 of the Domestic Relations Law. Consequently, while this court will no longer regard section 245 as constitutionally invalid, it will, nevertheless, refuse to grant a motion for contempt pursuant thereto where the due process rights of the debtor husband are found wanting. There must be full compliance with the requirements discussed in Walker and set out in Darbonne and reiterated above.
As an aid to the bar in meeting these requirements, it may be wise to conspicuously include the following statements on the face of the order to show cause to punish the husband for contempt for nonpayment of alimony, support, maintenance or counsel fees:
1. This is a motion to punish the defendant for contempt of
court for his willful failure to pay $-.
2. If found guilty by the court of contempt, a fine may be imposed.
3. The defendant may purge himself of such contempt by paying the fine.
4. Upon failure to pay, then without further notice an order may issue to the Sheriff to imprison the defendant for his contempt of court.
5. The defendant is entitled to a hearing in court with respect to this contempt motion.
*671 6. The defendant has a right to be represented by an attorney at the hearing and that if he cannot afford one, the court will appoint counsel for him upon his application to the court prior to the date set for the hearing.
To avoid the possibility that the defendant may evade or delay the consequences of a motion to punish for contempt by his nonappearance, it may also be wise for the petitioner to serve the defendant with a subpoena simultaneously with the order to show cause.
E. The last branch of plaintiff’s relief concerns a request for counsel fees in connection with the instant application. Defendant argues that this proceeding is not one of the enumerated instances in section 237 of the Domestic Relations Law in which counsel fees may be awarded. The court disagrees.
Subdivision (b) of section 237 specifically provides that counsel fees are available "upon any application by * * * order to show cause concerning custody, visitation or maintenance of a child” (emphasis supplied). Clearly, the instant motion to enforce the payment of arrears, relating in part to child support, concerns the "maintenance of a child” (Matter of Raffa, 24 AD2d 494).
Furthermore, section 238 of the Domestic Relations Law provides that in any proceeding pursuant to section 244, inter alia, the court may in its discretion require the husband to pay the wife’s expenses in bringing, carrying on or defending such action or proceeding. The Appellate Division, Second Department, cited this section as supporting an award of counsel fees in a proceeding by a wife to enter judgment for alimony arrears (Math v Math, 25 AD2d 852) which is precisely the case here.
Accordingly, the court grants the plaintiff reasonable counsel fees in the sum of $850.
In view of the above disposition of plaintiff’s various claims for relief, the defendant’s cross motion for dismissal of this proceeding for lack of jurisdiction over the subject matter is denied. This proceeding is properly before the court pursuant to CPLR article 54.